# In the United States Court of Federal Claims

No. 12-597C

(Filed under Seal: October 25, 2013)
(Reissued: October 31, 2013)

| | |
|---|---|
| **MILES CONSTRUCTION, LLC,** | )  Post-judgment request for attorneys' fees |
| | )  and expenses under the Equal Access to |
| **Plaintiff,** | )  Justice Act, 28 U.S.C. § 2412(d); |
| | )  prevailing party; whether the |
| **v.** | )  government's posture in the case was |
| | )  substantially justified; fees |
| **UNITED STATES,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

Edward T. Delisle, Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Philadelphia, PA, for plaintiff.  With him on the briefs was Maria L. Panichelli, Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Philadelphia, PA.

Meen Geu Oh, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER[1]

LETTOW, Judge.

A post-trial judgment was issued in plaintiff's favor in this pre-award bid protest contesting an action by the Department of Veterans Affairs ("VA"), Office of Small and Disadvantaged Business Utilization ("OSDBU"), decertifying Miles Construction, LLC ("Miles") as a qualified service-disabled veteran-owned small business ("SDVOSB") and nullifying an apparently successful offer Miles had made for a contract to repair a storm sewer at a VA medical center.  That action had been taken by OSDBU in response to an agency protest by

---

[1]Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the Court of Federal Claims ("RCFC") and the protective order entered in this case, it was initially filed under seal. The parties were requested to review this decision and to provide proposed redactions of any confidential or proprietary information.  No redactions were requested.

another offeror for the contract. *See Miles Construction, LLC, v. United States*, 108 Fed. Cl. 792, 796 (2013). The judgment set aside the decertification and restored Miles to the qualified list of SDVOSBs eligible for contracts under the VA's Veterans First Contracting Program. *Id.* at 807. On the basis of the court's judgment, Miles has moved for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). *See* Pl.'s Mot. for an Award of Att'ys' Fees Under the Equal Access to Justice Act ("Pl.'s Mot."), ECF No. 48. Overall, Miles seeks $44,765.94 in attorneys' fees and expenses.[2] The government resists any award of attorneys' fees and expenses, maintaining that its position in the underlying litigation was substantially justified. The government also questions elements of Miles' calculation of fees and expenses.

## BACKGROUND

The relevant facts in this case date back to January 19, 2011, when Miles first applied to the VA for SDVOSB status. *Miles*, 108 Fed. Cl. at 795. During an investigation by the VA's Center for Veterans Enterprises ("CVE"), into Miles' application, Miles amended its Operating Agreement to be consistent with applicable regulatory requirements for SDVOSBs. *See* Sealed Op. and Order, ("Sealed Op.") at 2, ECF No. 44. At the end of its investigation, CVE nonetheless rejected Miles' application due to control and ownership concerns. *See id.* After waiting six months, the regulatorily specified hiatus before a rejected applicant can file a new request for certification, Miles again sought approval as a SDVOSB on November 17, 2011, based upon further changes to its Operating Agreement. *See id.* This time, the CVE approved Miles' application and added it to its database of companies eligible for Veterans First Contracting Program projects. *See id.*

On June 21, 2012,[3] VA opened bidding for a SDVOSB set aside to repair a storm sewer, Solicitation Number VA-244-12-B-0455. *See* Def.'s Opp'n to Pl.'s Mot. for an Award of Att'ys' Fees Under the Equal Access to Justice Act ("Def.'s Opp'n") at 1, ECF No. 54; Pl.'s Mem. of Law in Support of Pl's Application for Att'ys' Fees Under the Equal Access to Justice Act ("Pl.'s Mem."), at 4, ECF No. 48-2. Miles submitted a bid on this solicitation and was the lowest bidder. *Miles*, 108 Fed. Cl. at 795. Another interested bidder challenged Miles' eligibility as an SBVOSB by filing a protest with the contracting officer, contending that Miles' majority owner did not actually control the company. *Id.* at 796. After a lengthy delay, the contracting officer forwarded the protest to OSDBU, which notified Miles of the protest on August 15, 2012 and provided Miles a week to respond. *Id.* Miles responded in a timely manner to the protest. *Id.* On August 27, 2012, OSDBU rendered its decision, finding that although the grounds of the protest were not valid, Miles was nevertheless ineligible for SDVOSB status because its majority shareholder did not have "unconditional ownership" as required by VA's

---

[2]In its reply brief, Miles reduced its request from $45,006.98 to $44,765.94 in light of its error in initially putting forward an admittedly excessive hourly rate for paralegal time. *See* Pl.'s Reply to Response to its Motion for Award of Attorneys' Fees ("Pl.'s Reply") at 13, ECF No. 57.

[3]The decision in *Miles* stated that the opening date for the solicitation was May 21, 2012, *see Miles,* 108 Fed. Cl. at 795, but the parties both agree that the date was June 21, 2012.

regulation found at 38 C.F.R. § 74.3.  *Id.*[4]  OSDBU reached that conclusion based upon a right-of-first-refusal provision in the Operating Agreement between Miles' shareholders.  *Id.*

Miles filed a bid protest in this court, challenging the conclusion by OSDBU that Miles was ineligible for SDVOSB status under 38 C.F.R. Part 74 and thus ineligible for an award under VA's Veterans First Contracting Program.[5]  The parties subsequently filed cross-motions for judgment on the administrative record.  On the merits, the court concluded that OSDBU's determination respecting the right-of-first-refusal was unfounded and contrary to law.  *Miles*, 108 Fed. Cl. at 803.  Additionally, the court held that OSDBU had contravened the procedural due process requirements of Section 555 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 555(b), because the agency protestor had not raised any claim based upon the right-of-first-refusal shareholder's agreement, and OSDBU had not given Miles notice that it would expand the agency protest to encompass issues attendant to that agreement.  *Id.* at 805.

Once the court's judgment became final, Miles filed its motion for attorneys' fees and expenses on April 9, 2013.  The government responded on July 1, 2013, and Miles replied to the government's response on July 25, 2013.  The disputed matters have been fully briefed and are now ready for disposition.

## ANALYSIS

### A.  *EAJA Requirements*

Congress enacted EAJA to provide a mechanism by which a qualifying party might receive reasonable attorneys' fees and expenses for prevailing in litigation involving the United States.  *See Scarborough v. Principi*, 541 U.S. 401, 406 (2004) ("Congress enacted EAJA, Pub. L. 96-481, Tit. II, 94 Stat. 2325, in 1980 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative

---

[4]In pertinent part, 38 C.F.R. § 74.3 states:

> Ownership by one or more veterans or service-disabled veterans must be unconditional ownership.  *Ownership must not be subject to* conditions precedent, conditions subsequent, *executory agreements*, voting trusts, restrictions on assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (other than after death or incapacity).

38 C.F.R. §74.3(b) (emphasis added).

[5]Miles initially sought a preliminary injunction, but the government represented that a new contractual award would not be made in light of the pending litigation.  The court accordingly deferred ruling on the preliminary injunction and invoked RCFC 65(a)(2) to consolidate the proceedings on the preliminary injunction with those on the merits. *See Miles*, 108 Fed. Cl. at 796.

proceedings brought by or against the Federal Government.'" (quoting H.R. Rep. No. 96-1005, at 9 (1980))); *see also Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 155 n.1 (1990).  To obtain such an award, five criteria must be satisfied: (1) the applicant must be a "prevailing party" in a suit against the United States; (2) the government's position must not have been "substantially justified;" (3) there were not any "special circumstances [that] make an award unjust;" (4) an EAJA fee application must have been submitted to the court within thirty days of final judgment in the action and also supported by an itemized statement; and (5) a qualifying party must, if a corporation or other organization, have not had more than $7,000,000 in net worth or 500 employees at the time the adversarial adjudication was initiated.  28 U.S.C. § 2412(d)(1), (2); *see Jean*, 496 U.S. at 158; *Metropolitan Van and Storage, Inc. v. United States*, 101 Fed. Cl. 173, 185 (2011);  *ACE Constructors, Inc. v. United* States, 81 Fed. Cl. 161, 164 (2008); *Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 76-77 (2007).  Miles bears the burden of establishing that it meets these requirements except as to the second criterion; the government has the burden to show that its position was substantially justified.  *See White v. Nicholson*, 412 F.3d 1314, 1315 (Fed. Cir. 2005); *Metropolitan Van*, 101 Fed Cl. at 186; *Hillensbeck v. United States*, 74 Fed. Cl. 477, 479-80 (2006); *Al Ghanim Combined Grp. Co. v. United States*, 67 Fed. Cl. 494, 498 (2005).

The government does not contest that Miles' EAJA application was timely filed; Miles submitted its motion for attorneys' fees and expenses within thirty days after the judgment, entered February 7, 2013, became final and not appealable.  *See* Def.'s Opp'n at 4.  The government similarly accepts that Miles is a "prevailing party" within the meaning of the statute. *Id.* at 3-4; *see Owen v. United States*, 861 F.2d 1273, 1274 (Fed. Cir. 1988) ("[A] prevailing party under the EAJA is one succeeding on any significant issue which achieves some of the benefits sought by the suit." (citation omitted)).  The government further concedes that Miles is a "qualifying party" within the meaning of the statute, that Miles provided an "itemized statement" of fees sought, and that no "special circumstances" exist which would make an EAJA award unjust.  The government's opposition is focused on its contention that the court should deny Miles' application because the government's position was "substantially justified."   *See* Def.'s Opp'n at 1, 4-10.

### B.  Substantial Justification

To meet its burden of proving that its litigation position was "substantially justified," *see White*, 412 F.3d at 1315; *Hillensbeck*, 74 Fed. Cl. at 479-80; *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 512 (2003), the government must show that its position was "'justified in substance or in the main' – that is, justified to a degree that could satisfy the reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Rather than examining a party's stance upon every individual issue addressed in the case, *Gargoyles, Inc. v. United States*, 45 Fed. Cl. 139, 148 (1999), the court must determine "whether the government's overall position [both prior to and during the litigation] had a reasonable basis in both law and fact."  *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991); *see also Blakley v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'" (quoting *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995))).

The government's position "can be justified even though it is incorrect." *Manno v. United States*, 48 Fed. Cl. 587, 589 (2001) (internal quotations omitted). The inquiry is "not what the law now is, but what the [g]overnment was substantially justified in believing it to have been." *Loomis v. United States*, 74 Fed. Cl. 350, 355 (2006) (quoting *Pierce*, 487 U.S. at 561). "Substantially justified" is not to "'be read to raise a presumption that the [g]overnment position was not substantially justified simply because it lost the case.'" *Scarborough*, 541 U.S. at 415 (quoting H.R. Rep. No. 96-1005, at 10). Rather, substantial justification lies somewhere between winning the case and being "merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566.

The government presses two arguments in support of the proposition that its overall position in this matter was substantially justified. First, the government argues that OSDBU reasonably concluded that Miles' right-of-first-refusal agreement violated the "unconditional ownership" provision of 38 C.F.R. § 74.3(b). Def.'s Opp'n at 4-7. Second, the government argues that OSDBU was substantially justified in the level of process it afforded Miles because OSDBU provided Miles with an opportunity to respond to the agency protestor's contentions and to a generally stated reference to ownership and control in the notice provided to Miles, *id.* at 8-10, and that it did not single out Miles for differing treatment, *id.* at 9-10. Miles resists these arguments and contends that "the government was at no point substantially justified in its position." Pl.'s Reply at 2.

1. *Application of 38 C.F.R. § 74.3(b).*

The government reiterates its position on the merits that the right-of-first-refusal agreement by Miles' shareholders constituted an executory agreement and thus abridged the "unconditional ownership" provision of 38 C.F.R. § 74.3(b). The government points to prior decisions by the Small Business Administration ("SBA") finding that right-of-first-refusal clauses violated SBA's regulation set out at 13 C.F.R. § 125.9, arguing that SBA's regulation is analogous in effect to VA's regulation. Def.'s Opp'n at 5. In *Miles*, the court rejected this analogy because the SBA's regulation is a more categorical provision. *See Miles*, 108 Fed. Cl. at 802. SBA's regulation, 13 C.F.R. § 125.9, simply uses the term "unconditional ownership" without explanation or qualification. *See* 13 C.F.R. § 125.9.[6] Section 74.3(b), on the other hand, contains an extended explanation of "unconditional ownership" that principally defines such ownership negatively by citing as disqualifying arrangements "*executory agreements*, voting trusts, restrictions on assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (other than after death or incapacity)." 38 C.F.R. § 74.3(b) (emphasis added). VA's regulation also positively allows "*[t]he pledge or encumbrance of stock or other ownership interest* as collateral, including seller-financed transactions, . . . *if the terms follow normal commercial practices and the owner retains control*

_____

[6]SBA's regulation specifies that "[a] concern must be at least 50% unconditionally and directly owned by one or more service-disabled veterans." 13 C.F.R. § 125.9. The SBA regulation applies to Service-Disabled Veteran-Owned Small Business Concerns, *see* 13 C.F.R. § 125.8, a focus of a contracting preference program somewhat comparable to VA's Veterans First Contracting Program.

*absent violations of the terms*." *Id.* (emphasis added).  In short, unlike the SBA regulation, the VA's regulation substantially alters "unconditional" to accommodate practical commercial arrangements while preventing ownership benefits from falling into the hands of non-veterans.

In addressing the agency protest of a contractual award to Miles, OSDBU made no effort to delineate the relative scope of VA's regulation as contrasted to SBA's rule.  OSDBU instead treated the regulations as being *in pari materia*, to be construed together.  That was a significant failing.  In actuality, for this case, the key to VA's regulation is the term "executory agreements," and that term has gained considerable interpretive gloss in the bankruptcy context, as the decision in *Miles* explained.  *See Miles*, 108 Fed. Cl. at 802.  In particular, normal commercial rights of first refusal are not executory contracts under the Bankruptcy Code.  *See id.* (citing *In re The IT Group, Inc.*, 302 B.R. 483 (D. Del. 2003)).  In short, OSDBU's decision disqualifying Miles was premised upon decisions applying an inapplicable regulation and failed to take any account of the nuanced provisions of VA's own rule.[7]

The government argues also that OSDBU was substantially justified in its decision because "the VA was addressing a novel issue of law that presented to this [c]ourt an issue of first impression."  Def.'s Opp'n at 6.  Although the government is correct that courts should consider the lack of legal precedent when determining if the government's posture was substantially justified, *see White*, 412 F.3d at 1316-17, it is wrong to suggest that "[c]ourts have routinely found" governmental actions to be substantially justified when there is a lack of legal precedent, Def.'s Opp'n at 7.  Rather, the court's determination should reflect a "totality of the circumstances."  *White*, 412 F.3d at 1317.  In this instance, even if prior to *Miles*, there were no reported decisions directly "address[ing] the scope of executory agreements in the specific context of Section 74.3(b)," the specific language of the regulation and decisions construing that language in the bankruptcy context should have been, but were not, examined by OSDBU in applying Section 74.3(b).  *Miles*, 108 Fed. Cl. at 802.  When looking at the issue as a whole, the court determines that the government was not substantially justified in its determination that the right-of-first-refusal agreement between Miles' shareholders violated 38 C.F.R. § 74.3(b).

2. *Due process.*

The government's second argument, that it was substantially justified in the level of due process it provided Miles, is equally unavailing.  First, the government argues that, according to the VA's regulation governing agency protests, 48 C.F.R. § 819.307, it was not obligated to provide Miles with *any notice* regarding the protest.  Def.'s Opp'n at 8.  This argument ignores OSDBU's legal obligations under Section 555 of the APA, which provides basic procedural due process rights to a party in an agency proceeding.  *See Miles*, 108 Fed. Cl. at 804-05.  OSDBU is an "agency" as defined by the APA, *see* 5 U.S.C. § 551(1) ("'agency' means each authority of the Government of the United States"), and OSDBU's proceeding was an "adjudication," *see* 5 U.S.C. § 551(7) ("'adjudication' means agency process for the formulation of an order").  The

---

[7]There is no merit to the government's argument that OSDBU's position was substantially justified because it followed established agency policy and did not single out Miles for different treatment.  Def.'s Opp'n at 9-10.  Even assuming for purposes of argument that OSDBU had such a policy, that policy had a flawed foundation.

government elaborates that it was without guidance that OSDBU's determinations are subject to Section 555 of the APA.  Def.'s Opp'n at 9.  Although no prior case specifically states this proposition, Subsection 555(b) of the APA is "universally understood to establish the right of an interested person to participate in an on-going agency proceeding."  *Block v. Securities & Exch. Comm'n*, 50 F.3d 1078, 1085 (D.C. Cir. 1995).  The fundamental requirement of due process is the opportunity to be heard "'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).[8]  In short, Miles was entitled to notice that OSDBU was expanding the agency-protest proceeding to encompass the ownership ground that was not raised by the protestor.[9]

### C. Attorneys' Fees

EAJA requires an itemized statement stating actual time expended and rate billed.  28 U.S.C. § 2412(d)(1)(B).  Miles provided such a statement with its EAJA motion.  *See* Pl.'s Mem. Ex. C, Ex. D.  Of the 220 attorney and paralegal hours Miles claimed, the government disputes ten entries, totaling 20.3 hours, arguing those entries (and hours) should be disregarded because the entries are not sufficiently descriptive.  Def.'s Opp'n at 11-12.  The court disagrees.  The entries in question provide sufficient detail to inform the court as to the content of the work done during the hours claimed.[10]  And, the time claimed, 220 hours in total, is reasonable for this bid protest.  Therefore, all of the hours listed in the statement are included in the fees calculation.

---

[8]The court's determination that OSDBU failed to provide Miles with basic procedural due process should not have been surprising to the government.  In many other areas of law, courts require that a party to an agency proceeding have notice and an opportunity to respond to pertinent contentions, specifically when the agency is considering a new ground for rejecting the party's position or application.  *See Rambus Inc. v. Rea*, _ F.3d _, _, 2013 WL 5312505, at *6-*7 (Fed. Cir. Sept 24, 2013) ("The ultimate criterion [before the court] is whether the appellant has had before the P[atent and] T[rademark] O[ffice] a fair opportunity to react to the thrust of the rejection. . . .  We cannot let the [agency] shortcut this procedure and deprive appellants of their due process rights." (internal quotation and citation omitted)); *see also In re Biedermann*, __ F.3d __, __, 2013 WL 5663429, at *5 (Fed. Cir. Oct. 18, 2013) (applying the APA to the Patent and Trademark Office).

[9]In *Miles*, the court accepted that OSDBU was permitted to expand the issues considered in the agency protest, *Miles*, 108 Fed. Cl. at 804, but such expansion triggered OSDBU's obligation under the APA to notify Miles about the new grounds under review and allow Miles to respond.

[10]The entries to which objection is made include "[r]eview of cases and regulations regarding cancellation of verification," "[w]ritten motions and [s]ubmission [l]egal [r]esearch; [p]reparation of [f]act statement for reply to DoJ motion," and "[w]ritten [m]otions and [s]ubmission [m]otion [f]or [s]ummary [j]udgment: [c]ontinuing timeline and argument preparation."  Def.'s Opp'n at 11-12.  Such entries might be criticized for grammar and for lack of precision in legal usage, but the tasks being accomplished can nonetheless be deciphered.

    *1. Cost of living adjustment.*

    The total amount claimed reflects Miles' calculation of a cost of living adjustment to the rate, as permitted by EAJA.  Pl.'s Mem. at 16-17.  The requested adjustment would increase the EAJA maximum hourly rate for attorneys' fees from $125 per hour to $185.26 per hour, as calculated by Miles.  Pl.'s Mem. at 16 & Ex. D.[11]  The court ordinarily grants a cost of living adjustment in an EAJA action when the Department of Labor's Consumer Price Index ("CPI") indicates that such an adjustment is warranted.  *See Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 705 (2010) (citing *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988)).  The government does not resist a cost of living adjustment or contest Miles' method of calculating the adjustment.  Miles' calculations are based on an average of the CPI for urban consumers during the months of the litigation, resulting in an adjusted rate of $185.26.  *See* Pl.'s Mem. & Ex. D.[12]  Use of an average is appropriate, given the compressed duration of this bid protest proceeding.  *See United Partition Sys., Inc. v. United States*, 95 Fed. Cl. 42, 58 (2010) (citing *Chiu*, 948 F.2d at 722 n.10 (noting that "in an appropriate case" the court may use a "single midpoint adjustment factor applicable to services performed before and after that mid-point")).  The court accepts this rate for attorneys' fees.

    2. *Paralegal fees.*

    Miles also claims four hours of paralegal fees, billed at an actual rate of $125 per hour.  Pl.'s Mem. at 13 & n.2.  While paralegal fees are recoverable under EAJA, the allowable rate should be based on the then-prevailing market rate rather than the actual rate billed.  *See Dalles Irrigation*, 91 Fed. Cl. at 708 (calculating paralegal fees based on a cost-of-living-adjusted average rate for paralegal fees).  Miles, however, provides no information regarding the prevailing market rate for paralegals in the Philadelphia area.  The government also provides no indicia of a prevailing rate for paralegal time.  In the circumstances, the court will apply a base rate for paralegal time most recently used in a somewhat comparable urban area, $90 per hour, from the *Dalles Irrigation* litigation.  *Id.*  The result is a COLA-adjusted amount of $96.46 per hour.  Therefore, Miles can recover $385.84 in paralegal fees.

    *3. Expenses.*

    The government does not object to Miles' claimed expenses of $4,249.78.

---

    [11]A $125 per-hour cap applies to attorneys' fees awarded pursuant to EAJA, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).

    [12]Miles' proposed adjustment is based upon "the average [CPI-U] for August 2012 — March 2013."  Pl.'s Mem. Ex. D, ¶ 18.

**CONCLUSION**

For the reasons stated, Miles' application for attorneys' fees and expenses under EAJA is GRANTED IN PART.  Miles is awarded attorneys' fees of $40,016.16, paralegal fees of $385.84, and expenses of $4,249.78.  Accordingly, the clerk shall enter judgment for plaintiff in the total amount of $44,651.78, representing its fees and expenses allowable under the Equal Access to Justice Act.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge